In the Matter of the Application of the CITY OF NEW YORK, Relative to Acquiring Title, Wherever the Same Has not Been Heretofore Acquired for the Same Purpose in Fee, to the Real Property Required for the Opening and Extending of Cruger Avenue, from Pelham Parkway North to Boston Road; Holland Avenue from Pelham Parkway North to Boston Road; Waring Avenue from White Plains Road to Wallace Avenue and Pelham Parkway North from White Plains Road to Wallace Avenue, in the Borough of The Bronx, City of New York.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant; THE CITY OF NEW YORK, Respondent.

First Department, July 6, 1923.

Eminent domain — condemnation by city of New York of land for street purposes acquired by State under former Public Lands Law, § 30, and former State Finance Law, §§ 90, 91, on foreclosure of mortgage given to United States Loan Commissioners — land so held by State as proprietor may be condemned by city of New York under Greater New York charter, § 970.

Land acquired by the State of New York on the foreclosure of a mortgage held by the United States Loan Commissioners was, under section 30 of the former Public Lands Law and sections 90 and 91 of the former State Finance Law, acquired by the State as proprietor and not as sovereign and may be condemned for street purposes by the city of New York under section 970 of the Greater New York charter.

APPEAL by the People of the State of New York from so much of an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 23d day of January, 1923, as denies a motion made by the Attorney-General to dismiss the proceeding in so far as it relates to land owned by the People of the State of New York or in which said People have any interest.

The opinion of the Special Term is reported in *Matter of City of New York (Cruger Avenue)* (119 Misc. Rep. 789).

*Carl Sherman, Attorney-General [Anson Getman, Deputy Attorney-General,* of counsel], for the appellants.

*George P. Nicholson, Corporation Counsel [Joel J. Squier* of counsel; *Charles A. Molloy* with him on the brief], for the respondent the City of New York.

McAVOY, J.:

Our determination is asked on this appeal of the question: Has the city power to condemn lands of the State for a public purpose, when said lands are not being used by the State for any public

purpose, but are lands acquired by the State through buying in at foreclosure of these lands which had been theretofore mortgaged to the commissioners for loaning certain funds of the United States of the county of New York?

Chapter 413 of the Laws of 1897, being chapter 10 of the General Laws of the State of New York, and designated as the State Finance Law, which was in force when the mortgage involved herein was given and foreclosed, provided in section 82 that the United States deposit fund received from the surplus moneys of the Treasury of the United States, pursuant to an act of the Congress entitled "An Act to regulate the deposits of the public money," passed June 23, 1836, shall be held by the State upon certain terms and conditions therein prescribed.

The State Finance Law also provided, in section 83 thereof, for the appointment of commissioners for loaning the moneys belonging to the United States deposit fund.

The State Finance Law (§ 90, as amd. by Laws of 1898, chap. 360) further provided that if any mortgage held by the United States Loan Commissioners shall not be paid within a certain time after the same becomes due, title to the property on which the mortgage is a lien shall be and become vested in the State of New York, subject to the right of redemption by the mortgagor; and also provided for cutting off the right of redemption by the foreclosure of the mortgage and the sale of the premises; and also (§ 91) provided that in case the amount due is not realized on the sale, the property shall be bid in by the Commissioners and that then title thereto shall be taken in the People of the State of New York, free from any right of redemption in the mortgagor.

The Public Lands Law (§ 30) at the time of the foreclosure in question provided and now provides that "All lands purchased by or for the State on the foreclosure of any mortgage given on the loan of any United States deposit funds, or on any loan of money for the State " shall be classified as " Unappropriated State Lands." (See Gen. Laws, chap. 11 [Laws of 1894, chap. 317], § 30; Consol. Laws. chap. 46 [Laws of 1909, chap. 50], § 30, as amd. by Laws of 1916, chap. 299.)

The State of New York through the foreclosure in 1903 of the mortgage given to the loan commissioners in 1901 became vested with and holds title to damage parcel No. 6, the parcel here in question, merely as a proprietor, stripped of all rights as sovereign.

That a sovereign State may hold property as a proprietor and not as sovereign is recognized in law. In *City of Oswego* v. *Oswego Canal Co.* (6 N. Y. 257) the court (at p. 265) said: " In laying out the village plot, and in selling the building lots, the State acted

as the owner and proprietor of the land; and the effect of the survey and sale, in reference to the streets laid down on the map, was the same as if the survey and sale had been made by a single individual."

Elliott on Roads and Streets (Vol. 1 [3d ed.] § 150), reads in part as follows: " State may hold property for public or private purpose.  Where the State or Nation enters into a contract, or acquires property for a purpose not essentially public, the rules applicable to private persons under like conditions apply, in a general sense, to the State or Nation.  It is not strictly accurate to say that the property is held as private property, for a State or Nation cannot, in a strict sense, be said to hold property for private purposes, but there is a distinction between purposes purely public and purposes of a private nature.  Thus, if the State should take land for the purpose of a public way, the purpose would be essentially public, but if it should buy in land sold upon the foreclosure of a mortgage executed to it, or should take property in payment of a debt due to it, the purpose for which the property would be held would be, in a qualified sense, private."

Lewis on Eminent Domain (Vol. 1 [3d ed.], § 2) supports this view of dual capacity in title holding by a State.  The author says: " The rights and powers which the State has in, or over, public property may be classified under a few heads, as follows:

" *First.* The State may possess property in its individual or organic capacity which it holds for sale or profit, and in which the people distributively have no right whatsoever.  In respect to property of this sort, the State stands in the same relation as any citizen to the property he possesses, and may use, enjoy, control and dispose of it in the same manner."

The power to condemn lands of the State by a municipality is thus recognized only where the State is acting as a proprietor and not as a sovereign.  There is no inconsistency in this acquisition with the theory of eminent domain.  The State itself has by its own consent given the power to condemn to its creature, and when not inconsistent with some public use the State has the same status as has any other individual ownership.  (*Burbank* v. *Fay*, 65 N. Y. 57.)

The Legislature, in the Greater New York charter (Laws of 1901, chap. 466, § 970, added by Laws of 1915, chap. 606, as amd. by Laws of 1917, chap. 631*), has delegated to the city of New York the duty and obligation of the State to open highways within the city for the benefit of all the people of the entire State.  Sec-

---

\* Since amd. by Laws of 1922, chap. 563.— [REP.

tion 970 provides as follows: " The city of New York may acquire title either in fee or to an easement, as may be determined by the board of estimate and apportionment, for the use of the public, to all or any of the real property required for streets," etc.

This provision of the charter should be interpreted on the theory that in opening streets the city is the agent of the State, and in the light of the purpose to be served; and consideration should be given the fact that damage parcel No. 6, although owned by the State, is not devoted to any public use nor held for the public in the State's sovereign capacity as *parens patriæ.*

The main authority of the Attorney-General does not touch the point. The Attorney-General relies on *Matter of City of New York (Waterfront Improvement)* (201 App. Div. 593; affd., 234 N. Y. 562). But the decision in that case is not conclusive on this inquiry because there the city was seeking to condemn lands under water owned by the State. Lands under water owned by the State are held subject to a public trust that they shall be devoted to commerce. Thus the title is held as a trust by the sovereign for the benefit of the people of the realm. The lands sought to be condemned in the matter discussed in 201 Appellate Division, 593 (*supra*), being owned by the State and held for a public purpose, it was necessary, in order that the city might condemn the same, that it proceed under express power, which the court held the city did not have. The Court of Appeals affirmed the decision of the Appellate Division on the ground that the statute did not authorize condemnation proceedings in that instance. (234 N. Y. 562.)

But in the proceedings at bar damage parcel No. 6 is not devoted to any public use, and the State holds title thereto, not for a public use, but for private use, the same as an individual, and, therefore, the city does not need express power to condemn damage parcel No. 6.

The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., SMITH, MERRELL and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.